STATE of Maine

v.

James E. DILL.

Supreme Judicial Court of Maine.

Dec. 6, 1976.

Thomas E. Delahanty, Jr., Dist. Atty., Herbert Bunker, Asst. Dist. Atty., Auburn, for plaintiff.

Isaacson & Isaacson by Robert S. Hark, Lewiston, for defendant.

Before DUFRESNE, C. J., and WERNICK, ARCHIBALD and GODFREY, JJ.

GODFREY, Justice.

Two questions of substance are presented by this appeal: first, the sufficiency of the indictment under which defendant was convicted after a jury-waived trial, and, second, the effect of a certain variance between the indictment and the proof submitted by the State.

The indictment, purporting by its caption to be one for "violation of 17 M.R.S.A. § 1601 (selling mortgaged property)", charged Dill in the following language:

"On or about the 3rd day of December, 1975, at Lewiston, County of Androscoggin, State of Maine, the above-named defendant James E. Dill, did unlawfully, designedly and with intend [sic] to defraud Hal Lyons, sell to the said Hal Lyons one 1968 Pontiac upon which there was an existing mortgage. The said James E. Dill represented to the said Hal Lyons that there was no such mortgage, which pretense was false, and in reliance thereon and believing said pretense to be true, Hal Lyons did buy said automobile and pay to James E. Dill the sum of Two Hundred ($200) Dollars."

By a motion to dismiss, which was denied, defendant challenged the sufficiency of the indictment. He asserts that it failed to charge a single crime whose elements are distinct enough to allow for preparation of a defense and to form the basis, after acquittal or conviction, of a defense of prior jeopardy. In effect, he argues that cheating by false pretenses and selling mortgaged property were separate crimes under 17 M.R.S.A. § 1601 (now repealed and replaced) and that the indictment in this case made it difficult to tell which crime Dill was charged with and hence to prepare an adequate defense.

The language of section 1601 relevant to this case was as follows:

"Whoever, designedly and by any false pretense or privy or false token and with intent to defraud, obtains from another any money . . . or whoever knowingly, and with intent to defraud, sells, conveys, mortgages or pledges to another personal property on which there is an existing mortgage or to which he has no title, without notice to the purchaser of such mortgage or of such want of title, is guilty of cheating by false pretenses . . . ."

We think the trial court was correct in deciding that the indictment sufficiently charged a single crime the elements of which were set forth distinctly enough to permit preparation of a defense and to form the basis, after acquittal or convic-

tion, of a defense of prior jeopardy should the occasion arise.

Although the two parts of 17 M.R.S.A. § 1601 were enacted at different times, the provision about selling mortgaged property was enacted with the stated purpose that it be part of the cheating statute, P.L.1860, ch. 150, and it was incorporated into that statute in the next edition of the Revised Statutes, R.S.1871, ch. 126, where it remained until repealed and replaced in 1975. As it stood before the 1860 amendment, the statute required as one element of the crime of cheating by false pretenses, some "false pretense or privy or false token" as the method of inducing the victim to part with his money or property. The effect of the 1860 amendment was to make the statute applicable also to a particular class of cases of concealment as distinguished from outright misrepresentation; namely, where the actor knowingly, with intent to defraud, transferred to another personal property on which there was an existing mortgage or to which he had no title and gave the other no notice of the mortgage or the want of title. If the actor used misrepresentation to cheat his victim where the other essential elements of the crime of cheating were present it was not necessary for the State to resort to the provision added by the 1860 amendment in order to find him criminally liable.

Alone, the first sentence of the indictment falls short of charging defendant with cheating by concealment of an existing mortgage when he sold the car to Lyons; the sentence contains no allegation that the sale was without notice to the purchaser. Only by reading the second sentence, with its allegation of a false representation relied upon by Lyons in paying money to defendant, do we find a crime sufficiently alleged, and that crime is one arising under the false-pretense provision of section 1601. All the elements of that one crime, and no other, are properly alleged. Though inartfully drawn, the indictment adequately charges one crime and is not duplicitous.

The parenthetical reference in the caption of the indictment to "selling mortgaged property" did not vitiate the indictment or change its scope. The caption identified correctly the statute alleged to be violated, and the text of the indictment alleged facts with enough particularity to apprise defendant of all elements of the offense intended to be charged against him. The defendant was not misled to his prejudice in the preparation of his defense. *See State v. Stewart*, Me., 330 A.2d 800, 802 (1975).

Appellant's second point of appeal is that the trial justice improperly denied his motion for judgment of acquittal at the close of the State's case. The defendant was charged with cheating Lyons by selling him mortgaged property on the representation that it was not mortgaged, but the State proved that Dill sold property that was encumbered not by a chattel mortgage but by the security interest reserved in an existing conditional agreement. The defendant argued that the two types of security interest are different and that there was a fatal variance between the indictment and the proof.

On the evidence, the trial judge would have been warranted in finding that the facts of the case were as follows: Defendant bought a used 1968 Pontiac from a dealer, trading in his old car, paying $300 in cash, and executing a formal document entitled "Instalment Sale Contract" for the balance of the price, $646, plus various charges. The contract purported to reserve title in the seller for security until payment of the buyer's obligation under it. The dealer sold the contract to General Motors Acceptance Corporation, which filed a financing statement.

About three months later, having made no payments on the contract, defendant sold the car to one Lyons, another dealer in used cars, for $200. In reply to a direct question by Lyons during negotiations, defendant denied that there was any mortgage on the car. The handwritten bill of

sale, prepared by Lyons and signed by defendant, contained a statement that the car was "free of all leins encumbrances morgages etc" [sic], and Lyons read the bill of sale to defendant before he signed it. There was other evidence from which the judge could have concluded that defendant's false representation was made designedly, knowingly, and with intention to defraud, and that Lyons relied upon the representation in parting with his money for the car.

We read the indictment as one alleging, in effect, that Dill obtained $200 from Lyons, designedly and by false pretense and with intent to defraud, by misrepresenting to Lyons that the car Dill was selling him for that amount was not subject to any existing mortgage when, in fact, it was. The proof showed that the outstanding security interest in the car had been created by reservation of title under a conditional sale contract. By his appeal on the ground of variance, defendant asks us to treat the difference between a chattel mortgage and a security interest reserved by a conditional sale as substantial enough in the context of the cheating statute to require a judgment of acquittal. No technical problem of this kind would have arisen had the indictment specified that the alleged cheating by false pretenses took the form of selling a car encumbered with a security interest by false representations that the car was unencumbered. Certainly the trial judge could have treated the words "No leins encumbrances morgages etc" in the defendant's bill of sale as a representation to Lyons that the car was subject to no security interest reserved in a conditional sale. Had the indictment been so worded, it would have described with technical accuracy an act of cheating by false pretenses within the prohibition of the statute.

In the circumstances of this case, we think the inaccuracy of the indictment in its characterization of the security interest

actually outstanding was not a fatal flaw in the case for the prosecution.

We are aware of the strictness with which this court has applied the rule that proof must conform to the indictment. In *State v. Sequin,* 98 Me. 285, 56 A. 840 (1903), arising under this very cheating statute, we deemed fatal the variance between an indictment alleging that defendant did "grant, bargain and sell" a certain building and proof that defendant had mortgaged it. The court relied on the fact that the statute used four terms, "sells", "conveys", "mortgages", and "pledges", and appeared to use them distinctively; also, upon the fact that selling is distinctly different from mortgaging, not merely technically, but in legal and practical effect. The variance in the instant case relates, however, not to the kind of transfer made by the defendant as in *Sequin,* but to the characterization of the outstanding interest existing in the property at the time defendant transferred it. The variance in *Sequin* related to the very act of transfer by defendant that was alleged to have resulted in cheating the victim, and the court apparently considered substantial accuracy in the description of that act to be reasonably required of the State, especially where the several alternative kinds of transfer provided for in the statute were carefully listed. Here, the challenged variance related not to the defendant's own act of transfer but to the technical characterization of the outstanding interest that defendant denied existed while negotiating with the prospective purchaser of the car. We think this particular variance was immaterial. It did not mislead the defendant to his prejudice in the conduct of his defense on the merits, which was based upon defendant's testimony to the effect that he did not understand the consequences of the initial instalment sales contract. From the result of the trial, it appears that the trial judge simply did not believe that testimony in the light of other evidence. On Dill's line of defense, it could not have made any differ-

ence whether the indictment described the reserved interest as a "mortgage" or some other kind of security interest.

In our view the asserted variance is one for application of Rule 52(a) of the Rules of Criminal Procedure: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." We have had occasion before to apply that rule, holding that a variance cannot be said to affect substantial right "where appellant has not shown that he was in any way hindered in the preparation of his defense, or unfairly surprised at trial." *State v. Maples*, Me., 343 A.2d 583, 587 (1975).

There being no error disclosed by the record which requires reversal, the entry must be

Appeal denied.

POMEROY and DELAHANTY, JJ., did not sit.

All Justices concurring.